### SCHWARTZ et al. v. WOOD.

(Supreme Court, General Term, First Department.  January 13, 1893.)

1. CONTRACT FOR MAKING BUST—EVIDENCE OF LIKENESS—PHOTOGRAPHS

In an action for defendant's refusal to accept the bust of a person, which was to have been made from sittings, and a perfect likeness, it is not proper to allow witnesses who have never seen the person to testify to such likeness from photographs.

2. SAME—CROSS-EXAMINATION—TEST OF KNOWLEDGE.

Where a witness has testified that the bust was a good likeness of the person, it is proper, on cross-examination, for the purpose of testing his knowledge, to hand him a picture, and ask him if it is a picture of such person.

3. SAME.

Where a witness has testified to a conversation with defendant in which the latter was claimed to have said that the bust was a good likeness, to which witness had assented, and this was given as the whole conversation, defendant also should be allowed to state the conversation, and should not be confined merely to a denial of any such conversation as the one given, or to stating whether he had expressed any personal opinion of the bust.

4. SAME—EXPERT TESTIMONY.

One who has been well acquainted for many years with the person whose bust was to be made is competent to pronounce on the question of likeness, whether an expert, by virtue of such acquaintance, or not.

Appeal from judgment on report of referee.

Action by Jacob Schwartz and Anton Welzel against John Wood. From a judgment for plaintiffs, entered on the report of a referee, defendant appeals.  Reversed.

Argued before VAN BRUNT, P. J., and O'BRIEN and BARRETT, JJ.

Charles M. Stafford, for appellant.

Henry C. Bryan, (Thomas F. Byrne, of counsel,) for respondents.

O'BRIEN, J.  The action was brought by plaintiffs against the defendant, for breach of contract, upon his refusal to accept certain terra cotta busts of the Reverend T. De Witt Talmage.  The contract sued upon was in the following terms:

"Brooklyn, January 27th, 1890.

"Please make for me fifty (50) busts of Rev. T. De Witt Talmage,—I to secure Mr. Talmage's consent to sit for your sculptor as soon as possible,—for which I agree to pay six dollars apiece, net cash; to be delivered, as soon as finished, at 223 Fulton street.  The bust is to be perfect likeness of Mr. Talmage. and to be of first-class material, ('terra paca.')  I am to have the exclusive sale of these busts in Brooklyn, and Messrs. Schwartz not to sell to any one for less than $6 each.                  John Wood."

To show performance on plaintiffs' part, and breach on the part of the defendant, the former presented evidence tending to show that at the time the contract was signed the defendant delivered certain photographs, one of which was represented to be a good likeness of Mr. Talmage.  This circumstance seemed to have controlling weight in the mind of the referee, judging from his rulings throughout the case; for though it was testified by the artist who was brought to the defendant at the time of the making of the contract for the purpose of arranging for sittings by Mr. Talmage, and though the written contract itself provided that the defendant was to secure the consent of Mr. Talmage to sit for the sculptor, and though the evidence showed that the bust was made from

such sittings as were given by Mr. Talmage, supplemented, as they were, by the photograph or photographs which, it was claimed, were delivered by the defendant, these seem to have been entirely overlooked, and given little or no weight, in determining the question upon the issues raised by the pleadings. The defendant's refusal was principally based upon the ground that the plaintiffs had failed to comply with that portion of the contract which required that the bust should be a perfect likeness of Mr. Talmage. Upon plaintiffs' part, no serious effort was made to show that this condition was complied with. But several witnesses were introduced to establish the similarity between the photograph and the bust; only one witness, besides the sculptor employed by plaintiffs to make the bust, being produced by plaintiffs, who claimed to have any personal acquaintance with Mr. Talmage. This witness did testify that the likeness was a good one. But on the part of the defendant a number of witnesses, who from personal knowledge, and from having made photographs of him, were competent to speak, supported the defendant's contention that the bust was not a good likeness. Were we to consider this judgment upon the question of the preponderance of evidence, it would seemingly incline in defendant's favor; and such, we think, would have been the conclusion reached by the referee, were it not for the mistake into which he seems to have fallen, of regarding the contract which had been entered into by the parties as requiring only, on the part of the plaintiffs, the furnishing of a bust which was to be a good likeness of a photograph. It is not necessary, however, for us to dispose of this appeal upon the question of the weight of evidence; so many errors having crept into the record upon rulings made by the referee on the admission and exclusion of evidence—and all against the defendant, and so material upon the question at issue—that we have no hesitancy in reversing the judgment upon this ground. It is unnecessary to refer to all of them; a few, alone, being sufficient to show that the defendant is entitled to a new trial.

Two of plaintiffs' witnesses, upon defendant's objection that the contract provided that the bust should be made from sittings, and was to be a perfect likeness of Mr. Talmage, were allowed, though they had never seen Mr. Talmage, to testify that the bust was a likeness of the photographs, and a correct likeness of Mr. Talmage. Again, another witness for plaintiffs, upon direct examination, was allowed to testify to a conversation with the defendant in which the latter was claimed to have pointed to the bust, and said that it was a good likeness of Mr. Talmage, to which the witness replied that it was,—stating that that was the whole conversation. Upon the cross-examination of this same witness, the defendant's counsel asked him to state whether a picture which he handed him was a photograph of Mr. Talmage. This was objected to by plaintiffs, and the objection was sustained, to which ruling the defendant excepted. We think that, inasmuch as this witness, upon direct examination, had testified that the bust was a good likeness of Mr. Talmage, it was competent, upon cross-examination, to show the extent of his knowledge upon the subject. With respect to the conversation, moreover, detailed by this witness as having been had with the

defendant, the defendant, when called, and asked what was the whole conversation, was, under plaintiffs' objection, and the rulings of the referee, prevented from giving it.   True, the defendant was allowed to testify that he never had any such conversation with the witness McLean regarding the bust; but the evidence called out by the question to the defendant by his counsel, to state the whole conversation, the referee prevented him from giving; he himself confining the inquiry by asking the witness to state "if he had personally expressed any opinion about the bust."

Another serious error was that committed in the ruling of the referee excluding the entire testimony of a witness called for the defendant to prove that the busts were not a likeness of Mr. Talmage, or of any resemblance whatever.   When the introductory question was put to this witness, as to how long he had been acquainted with Mr. Talmage, it was objected to upon the ground that the defendant should not be allowed to prove anything by this witness; and notwithstanding the statement of counsel that this witness was a trustee of the Brooklyn Tabernacle, and had been for many years, and was well acquainted with Mr. Talmage, and that he was competent as a witness upon the question of whether the bust was a likeness of Mr. Talmage or not, he was prevented, at the very outset, from testifying; the referee excluding it upon the ground that such evidence would not qualify him as an expert.   Or, to put it in the referee's own language, he sustained the objection, saying, "I shall exclude any further evidence that does not qualify as expert evidence."   We think that in this the referee erred.   As well said in Barnes v. Ingalls, 39 Ala. 193:

"Although experts only may be competent as witnesses to testify whether or not a photograph is well executed, yet, to enable a person to determine whether the picture resembles the original, requires no special skill or knowledge of the photographic art; and on that question, consequently, a person for whom such a picture has been taken, although possessing no special skill or knowledge of the art, may testify that the picture was a good likeness.   *  *  *   The fact of likeness or resemblance is one open to the observation of the senses, and no peculiar skill is requisite to qualify one to testify to it."

Without further examining the case, we think we have indicated sufficient to show that errors were committed in the rulings made with respect to testimony material to, and affecting, the merits of the action. Such errors require that the judgment be reversed, with costs and disbursements to appellant, to abide the event, and that a new trial be had before another referee.

BARRETT, J., concurs.

VAN BRUNT, P. J., does not take part in decision.