PHILIP KRAVITZ, Respondent, v LONG ISLAND JEWISH-HILLSIDE
MEDICAL CENTER, COMMUNITY HEALTH PROGRAM OF
QUEENS-NASSAU, INC., et al., Appellants, et al., Defendant.

Second Department, December 30, 1985

## APPEARANCES OF COUNSEL

*Bower & Gardner (Siff & Newman, P. C. [Ignatius John Melito* and *Thomas R. Newman]* of counsel), for appellants.

*Kelner & Kelner (Joseph Kelner* of counsel), for respondent.

## OPINION OF THE COURT

LAZER, J. P.

Resolution of this appeal turns on the admissibility of certain opinion testimony as to the credibility of the plaintiff in a medical malpractice action in which there was no direct attack on plaintiff's character relating to veracity. Although some of the traditional concepts relating to opinion evidence are currently undergoing reevaluation, we conclude that the challenged testimony was inadmissible under both the old rules and those being proposed.

The liability aspect of the case was rather simple; during the course of a gall bladder operation, a large absorbent pad was inadvertently left in plaintiff's abdomen, necessitating another operation to remove the pad. While the pad was still in his abdomen, plaintiff suffered from fevers and chills, some of which are alleged to have been caused by the pad. Following the operation that removed the pad, plaintiff, who was an accountant, retired and moved to Florida, allegedly because of recurrent pain and weakness stemming from the pad and the removal operation. The action seeks recovery of damages for pain and suffering both before and after the pad removal operation and for loss of income. The jury's verdict awarded plaintiff the principal sum of $498,000, of which $111,000 was for pain and suffering and $387,000 for lost income. On this appeal, appellants concede their liability for negligently leaving the pad in plaintiff's abdomen and necessitating a second operation, but they contest the damage award on a variety of grounds, only one of which warrants discussion.

Plaintiff's claims are to a great extent based on allegations that he has suffered from recurrent pain and weakness since

the second operation. These allegations are essential both to plaintiff's claim for pain and suffering after that operation and to his claim for lost income. Because these symptoms could not be confirmed by objective tests and were supported mainly by plaintiff's own testimony, the jury's determination necessarily turned in large part upon their assessment of his credibility.

Called as an expert witness by the plaintiff was the physician who had been his family doctor for many years prior to the operation but who had not examined him since that time. This witness testified that plaintiff's pain and weakness were due to the pad removal operation, but on cross-examination he admitted that the symptoms were "subjective" in that they could not be objectively confirmed. Plaintiff's counsel was permitted, over objection, to elicit the witness' favorable opinion of plaintiff's veracity. The doctor testified that after many years of experience a doctor develops an ability to detect a patient who is malingering and that: "I have treated people who I know are very stable and who you take at face value that whatever he's saying is the truth, and that is my opinion of Mr. Kravitz, that he is a very stable type of individual who would not try to pull the wool over my eyes".

This testimony concerning plaintiff's credibility was clearly not an expert opinion that plaintiff's pain and suffering was real based on either a physical examination of the plaintiff or his medical records. Rather, it was the doctor's opinion of his former patient's veracity and stability and amounted to an attempt to bolster plaintiff's credibility with evidence of good character. Because the jury's view of plaintiff's credibility was so crucial a factor in the case, the propriety of the ruling allowing this line of inquiry determines the result of this appeal.

Before reaching the substance of the evidentiary issues, however, we pause to note that we cannot agree with our dissenting colleague's view that a cross-examiner who presses a doctor concerning the subjective nature of a plaintiff's complaints opens the door for the doctor to bolster the plaintiff's case by testifying on redirect that in his opinion, based on experience with malingerers and with the plaintiff, the plaintiff was not "a malingerer or a faker or an exaggerator in any sense of the word". Despite our colleague's declaration that this portion of the doctor's testimony was stricken, the record makes it clear that all that was stricken was an additional sentence volunteered by the doctor—"He is a very

stable, trustworthy individual". Since the admissibility issue thus remains with us, we turn to the evidentiary principles that must determine the result.

It is appellants' contention that an expert witness may not give opinion testimony as to the credibility of another witness because credibility is an issue of fact which must always be decided by the jury, particularly since it involves matters susceptible of being understood by members of the general public without expert assistance. Plaintiff, on the other hand, argues that even if such testimony would normally be inadmissible, here it was a proper response to appellants' emphasis upon the subjective nature of plaintiff's symptoms. We decline to indorse the broad "ultimate issue of fact" contention espoused by appellants because fresh currents now abound in the law of evidence and significant efforts are afoot to alter some of the traditional rules *(see, e.g., People v Cronin,* 60 NY2d 430; Proposed Code of Evidence §§ 404-405, 607-608, 701-704, and comments).

It is no longer true that an expert may not give an opinion on an ultimate question of fact in an appropriate case. In *People v Cronin (supra,* pp 432-433), the Court of Appeals indicated that testimony of this nature is admissible "where the conclusions to be drawn from the facts 'depend upon professional or scientific knowledge or skill not within the range of ordinary training or intelligence' * * * [and] given the nature of the subject, 'the facts cannot be stated or described to the jury in such a manner as to enable them to form an accurate judgment thereon, and no better evidence than such opinions is attainable' ". Thus, depending on the circumstances, an expert may be permitted to give opinion evidence concerning even the ultimate factual question.

When credibility is at issue, however, expert testimony has been held to a higher standard than is normally true for other types of expert testimony and is admissible only if the methodology applied by the expert is so reliable that he or she can testify that the results are conclusive and not merely accurate within a reasonable degree of certainty *(see, People v Allweiss,* 48 NY2d 40, 50; *People v Williams,* 6 NY2d 18, 26-27, *cert denied* 361 US 920). This is not so simply because the assessment of credibility is a quintessential jury function *(see generally,* Fisch, New York Evidence § 453 [2d ed]). Expert testimony as to credibility has been viewed with disfavor because of the fear that the trial would turn into a battle of conflicting experts on the collateral issue of credibility, each of whose

own credibility would in turn be questioned, distracting the jury from the true issues and perhaps causing them to place undue reliance on the expert rather than on their own judgment *(People v Williams, supra,* at p 27). Obviously, the requirement that the methodology be of such nature that its results are conclusive is extremely difficult to fulfill, and it is questionable at best whether the present state of the art is so exact as to allow such testimony in any case. We need not speculate in the instant case, however, because there was not even a hint of the requisite element of scientific conclusiveness in the doctor's testimony concerning plaintiff's credibility.

It is quite apparent that the doctor cannot be considered an expert with respect to his testimony concerning plaintiff's veracity; he was not a psychiatrist or an expert in human psychology and he did not purport to apply any special knowledge or skill in the area of credibility. Rather, his alleged expertise in judging credibility was based simply on the fact that in the course of medical practice he had dealt with numbers of people, some of whom he believed and some of whom he did not. Therefore, he was able to detect malingerers, not because of any medical symptoms they displayed, but because of their character. Careful scrutiny reveals the doctor's "expertise" to be nothing more than his subjective reaction to the person with whom he had dealt—something within the common experience of most of humanity. To deem this witness an expert on credibility would be tantamount to holding that any person who has considerable dealings with people who make claims or statements relating to claims, may qualify as an expert on credibility. Such a standard would qualify as credibility experts lawyers, investigators, Judges and a whole gamut of individuals who deal with people who make claims or statements concerning claims. It is plain to us that the witness' testimony as to credibility was not in fact expert opinion testimony, but opinion testimony by a lay person.

Whether such opinion testimony is admissible under the current state of the law poses yet another problem. Under old law in this State, a lay person was required to limit his or her testimony to the facts *(Lamoure v Caryl,* 4 Denio 370, 373; *Dewitt v Barley,* 9 NY 371, 375). Although it was not always so (7 Wigmore, Evidence § 1917 [Chadbourn rev 1978]; Fisch, New York Evidence § 361 [2d ed]), for at least the last century, lay persons have been permitted to give opinion evidence only when the subject matter of the testimony was such that it

would be impossible to accurately describe the facts without stating an opinion or impression *(see,* Richardson, Evidence, §§ 363, 366 [Prince 10th ed]; Fisch, New York Evidence § 361 [2d ed]). This rule has frequently been criticized *(see, e.g.,* Report of Commn on Administration of Justice in New York, 1934 NY Legis Doc No. 50, at 298; Sixth Ann Report of NY Jud Council, at 333-365 [1940]; Second Preliminary Report of New York Adv Commn on Practice and Procedure, 1958 NY Legis Doc No. 13, at 261-262; Fisch, New York Evidence § 363 [2d ed]) and most recently the much heralded but now apparently dormant Proposed Code of Evidence would allow a lay individual to provide testimony in the form of opinion or inference when it is "(a) rationally based on the perception of the witness; and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue" (Proposed Code of Evidence § 701).

But even if we were to adopt the proposed rule permitting the admission of lay opinion testimony concerning credibility as a matter of common law *(but see, Loschiavo v Port Auth.,* 58 NY2d 1040), the testimony would still run afoul of yet another evidentiary bar. The assessment of a witness' credibility involves two distinct aspects: the witness' truthfulness and the witness' ability to accurately perceive and communicate that about which the witness is testifying *(see, People v Wise,* 46 NY2d 321, 326; McCormick, Evidence § 33 [2d ed]; Fisch, New York Evidence § 446 [2d ed]). One way in which a witness' truthfulness can be brought before the jury is by evidence of those character traits which are indicative of the person's truthful nature or lack of it. Such evidence is a type of what is generally called character evidence. In the context of credibility, character evidence has traditionally consisted of testimony concerning the witness' reputation for truth and integrity rather than testimony in the form of an opinion about the truthfulness and integrity of the person *(see, Conley v Meeker,* 85 NY 618; *Spira v Holoschutz,* 38 Misc 754; Richardson, Evidence § 495 [Prince 10th ed]; Fisch, New York Evidence § 453 [2d ed]; Proposed Code of Evidence, comment to § 608 [a]). The reputation rule has also been the subject of criticism *(e.g.,* Fisch, New York Evidence § 463 [2d ed]; Proposed Code of Evidence, comment to § 608 [a]; *see also, People v Hinksman,* 192 NY 421, 432) because the opinion of a person's character held by those who know him is clearly probative and relevant and, viewed realistically, reputation evidence is, in any event, often no more than thinly veiled

opinion. Thus, the Proposed Code of Evidence would allow the use of opinion evidence of credibility whenever reputation evidence is admissible, so long as the general criteria for admission of opinion evidence are met (see, Proposed Code of Evidence § 608 [a]; § 701).

Even were we to apply such a liberalized rule, however, the opinion testimony in this case would be inadmissible because of the limitations placed upon the use of character evidence. Evidence of bad character is normally admissible in a civil case to impeach a witness (see, Richardson, Evidence § 494 [Prince 10th ed]; Fisch, New York Evidence § 452 [2d ed]). It may also be used in those cases in which a person's character is directly in issue as a matter of substantive law (see, Richardson, Evidence §§ 158-160 [Prince 10th ed]; Fisch, New York Evidence § 172 [2d ed]); thus, a defendant may introduce evidence of plaintiff's bad reputation in an attempt to mitigate damages in an action for defamation or malicious prosecution (see, Hart v McLaughlin, 51 App Div 411; see generally, Crane v New York World Tel. Corp., 308 NY 470, 478-479). But even under the most liberal approach, the use of evidence of good character in a civil case is more restricted and may be admitted only after a person's good character has been directly called into question by evidence of bad character or otherwise (Proposed Code of Evidence § 608 [a], and comment; see also, Richardson, Evidence § 161 [Prince 10th ed]; Fisch, New York Evidence § 172 [2d ed]; cf. Stafford v Morning Journal Assn., 142 NY 598).

When applying this principle in the context of impeachment of a witness, a distinction must be made between the contention that the witness is not testifying truthfully in a particular case and a claim that he or she is not a truthful person in general. If opinion evidence of good character is to be received to bolster the credibility of a witness, it is not enough to show that the witness has been subjected to the customary impeachment process which is part and parcel of most cross-examinations and is intended to demonstrate the lack of factual foundation or truthfulness of particular testimony. That type of impeachment generally does not constitute an attack upon character. Affirmative evidence of good character, such as truthfulness, to bolster a witness' credibility is admissible only if an attack has been made on the witness' truthful nature in general (see, Proposed Code of Evidence § 608 [a], and comment). This is so because it is both unnecessary and unwise to encumber the trial with a potential morass of such evidence

unless character per se is disputed *(see,* 4 Wigmore, Evidence § 1104 [Chadbourn rev 1972]; Proposed Code of Evidence § 608 [a], and comment).

Here, no effort was made to suggest that plaintiff was not normally a truthful person. The impeachment emphasized that the only evidence supporting much of his claim for damages was plaintiff's own testimony, and the focus, as is customary, was also on contradictions and improbabilities. Although this certainly suggested that plaintiff was lying in this case for obvious pecuniary reasons, it did not constitute an attempt to prove bad character. Thus, it was error to allow opinion testimony indicating that plaintiff is a truthful person, and under the circumstances of this case the error was fatal.

Accordingly, the judgment appealed from should be reversed and a new trial granted, limited to the issue of damages only.

BROWN, J. (dissenting). The majority would grant a new trial on the issue of damages upon the ground that the admission of opinion testimony with regard to plaintiff's credibility, in the absence of a direct attack on his character relating to veracity, was erroneous. The objectionable evidence, as indicated by the majority, consisted of testimony on redirect examination by plaintiff's long-time family physician who had been called as an expert witness and who was permitted to testify, over objection, that in his practice he had treated patients who were malingerers and that in his opinion plaintiff was "a very stable type of individual who would not try to pull the wool over my eyes".

It seems to me, however, that appellants' counsel, by posing a series of questions to plaintiff's doctor during cross-examination which were clearly intended to imply that plaintiff was lying with regard to his claims of pain and suffering and to discredit the testimony of the physician, had opened the door to the testimony to which he and my colleagues in the majority object. After the plaintiff's physician had admitted that the complaints plaintiff had made to him were subjective, defense counsel continued this line of inquiry, asking "In other words, there is no test that you can do to verify whether or not what Mr. Kravitz is complaining about is true?" The witness responded "There's no test", but was cut off by counsel when he attempted to add a comment to his answer. Later, defense counsel again took up this line of questioning, asking the witness whether it was only as a result of plaintiff telling

him that his abdomen bothered him that he was able to form his opinion as to the cause of pain. The witness answered affirmatively. When he was again asked if there was any test to verify his opinion, the physician stated that "since there is no test that can be done, you have to know your patient", and attempted to state that he knew plaintiff to be very stable, but was cut off by counsel. Thus, on cross-examination, defense counsel was able to severely discredit the testimony of the physician by implying that the plaintiff had lied to him and that his opinion was formed without any basis. Therefore, I submit that it was proper for plaintiff's doctor to testify on redirect examination that, notwithstanding the lack of an objective test, based upon both his general medical experience and his professional relationship with his patient, plaintiff was not, in his opinion, a malingerer. Where an opposing party opens the door on cross-examination to matters not touched upon during direct examination, by, for example, pointing out apparent inconsistencies in a witness' statements in an attempt to discredit his testimony, a party has a right on redirect to explain, clarify, or fully elicit the question only partially explored on cross-examination (*People v Melendez,* 55 NY2d 445, 451; *People v Regina,* 19 NY2d 65, 78). In this case, plaintiff was entitled to have his witness explain the manner in which he formed his opinion that plaintiff was not simply lying to him about his pain and suffering.

Moreover, even assuming that the testimony to which the majority objects was erroneously admitted, I would conclude that any such error must be viewed as harmless under the facts of this case. Directly following the admission of the disputed testimony, the following exchange occurred:

"Q. Doctor, in your opinion was Mr. Kravitz a malingerer or a faker or an exaggerator in any sense of the word regarding these matters that he has talked to you about?

"MR. BROWN: [Defense counsel] Objection, your Honor, it is a question for the jury.

"THE COURT: I will allow it.

"A. He is not. He is a very stable, trustworthy individual.

"MR. BROWN: Objection. Move to strike.

"THE COURT: The latter statement I will strike".

Thus, within minutes of the admission of the allegedly erroneous testimony, the court granted a motion to strike this virtually identical testimony relating to the witness' opinion of plaintiff's character. Although no request was made at that

time for curative instructions to the jury, the striking of the evidence was the equivalent of an instruction to the jury to disregard it *(see,* 8 Carmody-Wait 2d, NY Prac § 59:34). Therefore, in the absence of a request by defense counsel for further instruction, it must be assumed that he was satisfied that the jury would disregard this latter testimony. That being so, I cannot conclude that the prior admission of the virtually identical testimony substantially affected the outcome of the case. If the jury disregarded the latter testimony of the expert witness as to plaintiff's character, the earlier admission of similar testimony must be deemed harmless.

Accordingly, I dissent and vote to affirm the judgment appealed from.

BRACKEN and O'CONNOR, JJ., concur with LAZER, J. P.; BROWN, J., dissents and votes to affirm the judgment appealed from, with an opinion.

Judgment of the Supreme Court, Nassau County, dated December 14, 1983, reversed, on the law, and in the interest of justice, and new trial granted on the issue of damages only, with costs to abide the event.