OPINION OF THE COURT
George D. Marlow, J.
A petition was filed with this court by the Dutchess County Department of Social Services (hereinafter DSS) pursuant to Family Court Act article 10 alleging that respondent committed and allowed the commission of various acts of child abuse upon her four-year-old daughter, Janet. The petition avers, inter alia, that respondent had sexual contact with her daughter. Petitioner also claims she allowed more than one of her own boyfriends to have sexual contact with Janet, and that respondent and her boyfriends engaged in various sexual acts in the child’s presence and view.
This proceeding follows a report of suspected child abuse given to petitioner on November 5, 1984. That report was *1044 based on a statement of respondent’s daughter made to one of her playmates that she had been "licking the privates” of her mother’s boyfriends. Thereafter, a DSS caseworker obtained respondent’s permission to interview the child. However, that interview was terminated at respondent’s insistence after a mere 10 minutes. Subsequent attempts to arrange a meeting with the child, with the cooperation of respondent, met with no success. Respondent simply refused to allow the child to discuss the matter outside of her presence. Nevertheless, with the concurrence of the child’s natural father, who is divorced from respondent, the child was interviewed by Rene Finn of the Beacon Police Department and Margaret Shuhala, a caseworker in the Dutchess County Child Protective Services Unit. During the course of that December 16, 1984 interview, the child, aided by anatomically correct dolls, indicated that she had been sexually and otherwise abused by her mother and by men in her mother’s presence. A report of that interview and the testimony describing it revealed no telling, physical evidence of the alleged abusive acts.
However, on the basis of the latter interview this proceeding was brought, the child, was removed from respondent and she was placed with her father and his present wife. That placement continues following a hearing held pursuant to Family Court Act § 1028.
The subsequent fact-finding hearing was held over the course of several days. This decision addresses respondent’s motion to dismiss at the conclusion of petitioner’s direct case.
It is initially noted that the child’s descriptions of the various sexual acts, as relayed to the court by petitioner’s witnesses, were clear, detailed and specific. If properly corroborated (Family Ct Act § 1046), the conduct alleged unquestionably constituted gross forms of sexual abuse of the child by and with the consent of respondent. Therefore, the most difficult issue confronting this court at the conclusion of petitioner’s direct case concerns the legal sufficiency of the evidence offered to corroborate the child’s hearsay statements.
Family Court Act § 1046 (a) (vi), in pertinent part, provides that in any hearing under article 10: "previous statements made by the child relating to any allegations of abuse or neglect shall be admissible in evidence, but if uncorroborated, such statements shall not be sufficient to make a fact-finding of abuse or neglect. Any other evidence tending to support the reliability of the previous statements, including, but not lim *1045 ited to the types of evidence defined in this subdivision shall be sufficient corroboration. The testimony of the child shall not be necessary to make a fact-finding of abuse or neglect. ” (Emphasis added.)
In an attempt to ease the evidentiary requirements in child abuse and neglect cases, the last sentences of the quoted statute were added by our State Legislature during the pendency of the instant matter. The new evidentiary standard was made effective immediately and applicable to pending proceedings. (See, L 1985, ch 724.)
In the memorandum submitted in support of the amendment by its sponsor, Senator Mary B. Goodhue, the purpose and intent of the legislation are abundantly clear. Prior to the amendment, the courts took differing positions on the degree and quality of corroboration needed as proof in neglect and child abuse proceedings. In cases such as Matter of Margaret W. (83 AD2d 557); Matter of Nicole S. (123 Misc 2d 364, 368); Matter of Lydia K. (123 Misc 2d 41); and Matter of Cindy B. (122 Misc 2d 395), the courts required a high degree of corroborative proof to sustain an abuse or neglect petition. The standard judicially adopted approached that which is utilized in criminal prosecutions wherein each element of the offensive conduct as well as the identity of the perpetrator must be adequately and separately proven beyond a reasonable doubt. This was so despite Family Court Act § 1012, which specifically made the criminal standard of corroboration inapplicable to neglect and abuse proceedings.
Pointing to the need to afford courts an opportunity to attempt to deal with various forms of child abuse and neglect, to give aid to victimized children and to prevent a recurrence of offensive conduct, the new legislation was intended to adopt the less stringent common-law standard of corroboration. That standard, as defined in Black’s Law Dictionary 311 (5th ed) refers to corroborating evidence as "evidence supplementary to that already given and tending to strengthen and confirm it. Additional evidence of a different character to the same point.”
Even prior to the enactment of the foregoing amendment, its philosophy was adopted in Matter of Tara H. (129 Misc 2d 508 [Fam Ct, Westchester County]). There, the court referred to the common-law definition of corroboration contained in Ballentine’s Law Dictionary 276 (3d ed) which speaks of corroboration in terms of "evidence of such substantial facts *1046 and circumstances as will produce in a sound and prudently cautious mind a confident conclusion that the testimony of the complainant is true in all essentials * * * additional evidence of a different character to confirm the same point * * * such as tends to show its truth, or the probability of its truth.”
The opinion in Tara H. (supra, p 514), points out that corroboration commonly manifests itself in the form of "apparently inflicted injuries [a form of res ipsa] admissions of a parent, even though retracted * * * and the sworn testimony of others (adults and children)”. The court went on to review the great difficulty normally encountered in child abuse cases in which there may be no emotionally uninvolved or willing eyewitness to the events, and little or no physical evidence of trauma when the abusive acts are later disclosed. The only real or meaningful evidence of the tragic events may be the out-of-court statements of the young victim, whose words, no matter how convincing, would be insufficient if some reasonably reliable and constitutionally acceptable means of corroboration were not found, approved and utilized.
Among the factors given sufficient corroborative weight by Judge Miller in Tara H. (supra) was the testimony of the individual who conducted the "validation interview.” The testimony of this trained and experienced expert alluded to various actions and reactions which had been observed concerning the subject child which were consistent with the forms of response usually associated with sexually abused children. Among the factors considered significant by the expert in Tara H. and in the case at bar were the child’s extensive and detailed knowledge of and preoccupation with sexual matters to a degree far beyond that of a normal individual of her age. Also given importance in Tara H. was the absence of any evidence of prompting or outside influence. No evidence of outside prompting was adduced during the direct case herein.
The use of expert testimony to corroborate otherwise unverifiable acts of sexual abuse of children finds further support in Doe v New York City Dept. of Social Servs. (709 F2d 782, 791), in which the court determined that it was proper for the jury to consider expert testimony which had been based upon observations of the reactions and sexual "acting out” of the subject child.
That a trained expert, in various settings and under proper safeguards, can attest to the veracity of a person’s allegations was, to a limited degree, approved as a method of assisting the *1047 trier of facts in Kravitz v Long Is. Jewish-Hillside Med. Center (113 AD2d 577). While the court in Kravitz reversed that judgment because it viewed the so-called expert testimony given therein with most appropriate disfavor, it also made it clear that expert testimony given to support a witness’ veracity is admissible in certain defined circumstances. The entire subject of child abuse and the difficult evidentiary problems it presents have been given considerable attention by the courts over the past two decades. (See, e.g., People v Williams, 6 NY2d 18, 26-27; Matter of Michael G., 129 Misc 2d 186; State v Carlson, 360 NW2d 442 [Minn]; State v Kim 64 Hawaii 598, 645 P2d 1330; State v Middleton, 294 Ore 427, 657 P2d 1215.) It is an evolving area of the law that calls for creative, cautious and reliable approaches to issues of proof that endeavor to protect blameless children and give their alleged abusers sufficient due process safeguards (e.g., People v Henson, 33 NY2d 63, 73-74; Matter of Santos, 71 Misc 2d 789; Matter of Abeena H, 64 Misc 2d 965; Matter of Young, 50 Misc 2d 271, 272-274; Matter of S, 46 Misc 2d 161, 162; Commonwealth v Paquette, 451 Pa 250, 301 A2d 837; People v Jackson, 18 Cal App 3d 504, 95 Cal Rptr 919).
Petitioner argues that if this court now utilizes the standard established by the new statutory amendment as well as by some earlier and contemporary case law, the corroborative evidence presented in this matter passes muster. Relying in part on this court’s earlier decision in Matter of T. G. (128 Misc 2d 914), counsel for petitioner asks that great weight now be given to the detail and precision of the child’s sordid accounts as indicative of the improbability that they were fabricated tales. She also points to testimony which independently verifies that the men Janet identified as her abusers were in fact present in respondent’s home. Finally, it is argued that the testimony of Donna Zulch, the forensic supervisor and psychiatric social worker for the Astor Home, who interviewed and tested the subject child, further corroborates the previous out-of-court statements of the child by describing what the child told her, by describing her various observations of the child, and by her resulting opinions.
It is the opinions expressed by petitioner’s expert Ms. Zulch which, petitioner urges, furnish the requisite corroboration under the amended section 1046 (a) (vi). This court agrees. While no person possessed of a modicum of compassion would frivolously toss aside valid concerns that there are risks inherent in today’s holding, this court believes that the follow *1048 ing view, as previously expressed in Matter of T. G. (supra, at p 917), applies equally now: "Although it must be acknowledged that mistakes will inevitably be made — and this court does not minimize either the potential for error or the harm therefrom — parents, not defenseless children, must shoulder the burden of possible human imperfection. This court and its child protective procedures offer children their best and only protection. If a measure of gambling is unavoidably involved in these proceedings, it is preferable that the odds be with, rather than against, innocent children.”
The court notes that Ms. Zulch testified that she has a Bachelor’s degree in psychology, a Master’s degree in social work, is cofounder of the FITT (Families of Incest and Treatment Team), has been a social worker for 12 years, has worked at the Astor Home for two years, and has had considerable experience in dealing with child sexual abuse issues in 95% of her current and recent case load.
Specifically, Ms. Zulch testified that during the initial interviews, Janet exhibited chaotic behavior characteristics, impeded learning and evidence of delayed social development. Significantly, Ms. Zulch also noted that the child had considerable knowledge of adult sexual behavior and had a verbal preoccupation with sexual matters which was not typical of someone her age. Ms. Zulch asserted that the presence of these traits was indicative of a "classic symptomology” of a sexually abused child. In further support of her opinions, Ms. Zulch described the child’s reaction to the use of a coloring book which, she explained, is a tool used in evaluating sexually abused children. Again, the words used and drawings made by the child in the coloring book (which was received into evidence on consent) were, according to Ms. Zulch, plainly indicative of a sexually abused child. Finally, Ms. Zulch observed that there had been a marked and abnormally accelerated improvement in the child’s behavior since her removal from the allegedly abusive environment.
On cross-examination, Ms. Zulch conceded that she had received her certification as a psychiatric social worker in January 1985; that the evidence of a delay in the child’s social development was possibly due to the custodial change following the initiation of this proceeding; that her contact with Janet began approximately one month following removal of the child from the respondent; that the information she obtained from using the coloring book and in her testing of the child had no established or widely recognized standard for *1049 interpretation; that various words used by the child to describe her own sexual organs and those of her alleged abusers during discussions with the child at the start of this proceeding were not used by the child in any of her conversations with Ms. Zulch; that she was not familiar with Janet’s earlier behavior when living with respondent; that it was possible, but unlikely, that the marked improvement in the child’s behavior may have been merely due to a change in custody from her mother to her father — rather than as a result of her removal from a sexually abusive environment; and, that the foregoing improvement in the behavior of the child may have been due to a stabilization in her life following the custodial change to her father.
Virtually all of these concessions on cross-examination are either speculative or may be all or part of the issues which respondent may raise during the presentation of her case. Perhaps, after respondent concludes her phase of the case, and this court must rule on the entire matter, a result favorable to respondent may be called for by all of the evidence. However, at this juncture, the court is only asked to determine whether petitioner’s direct case is adequate, under section 1046 (a) (vi), to survive respondent’s motion to dismiss. This court is fully satisfied that it is.
In view of the foregoing, respondent’s motion to dismiss at the close of petitioner’s case is denied. The parties are directed to appear for a continuation of this fact-finding hearing on February 13, at 3:00 p.m. and for conference on February 3, at 3:15 p.m.