THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SAUL RUSSELL, Appellant.

Second Department, March 25, 1991

APPEARANCES OF COUNSEL

*Petito & LaRose (Bruce A. Petito* of counsel), for appellant.

*William V. Grady, District Attorney (Bridget Rahilly Steller* of counsel), for respondent.

## OPINION OF THE COURT

BALLETTA, J.

On the morning of August 14, 1987, the Main-Innis branch of Barclay's Bank in Poughkeepsie was robbed of over $10,000. During the course of the robbery, one of the bank tellers activated the bank's surveillance camera which took photographs of the robber as he left the bank. At the trial, the court permitted a number of lay witnesses, who were not eyewitnesses to the robbery but who were acquaintances of the defendant, to give their opinion that the individual in the bank surveillance photographs was the defendant. The defendant contends that the admission of this testimony was error. However, we disagree and affirm the judgment of conviction.

The bank opened for business at 9:00 A.M. on August 14, 1987, and a gentleman of medium height, dressed in a white hat with a black rim and a white linen jacket, entered and walked over to Ann Barnes Colangelo's teller station. The man handed her a note demanding money, gave her a paper bag, and then opened his jacket to show her what she believed to be a gun.

The bank was equipped with a surveillance camera which could be activated by removing certain bills from the drawers. Colangelo activated this camera as she proceeded to fill the bag with money from her drawer. Two other tellers, Bernice Dingee and Doreen LaGuardia, came out of the vault with more money which, pursuant to the robber's directions, Colangelo gave to him. He then placed the money into the bag and walked swiftly out of the bank. At that point, Colangelo sounded the alarm.

While all three tellers testified that the bank surveillance photographs taken during the robbery accurately portrayed the robber, none of them directly identified the defendant as being the individual in the pictures. However, all three did make in-court identifications of the defendant.

Andre Duncan, who had been living with the defendant for about eight months prior to the time of the robbery, testified that when the defendant had dropped him off at work at 7:20

A.M. on August 14, 1987, the defendant was sporting a stubby-haired beard. However, when the defendant picked him up from work at 4:00 P.M. that same day, the defendant was clean-shaven. After stopping to pay the rent to the landlord, they drove to Atlantic City.

During the drive to Atlantic City, the defendant showed Duncan a stack of twenties, bragging that he had over $10,000 in the paper bag. Despite the fact that the defendant had left his job in July 1987, in Atlantic City, the defendant began playing blackjack at $500 a hand and probably lost $4,000 or $5,000.

Duncan was shown the two bank surveillance camera photographs and identified the person shown in those photographs as the defendant. Duncan stated that the beard shown in the pictures was the same beard which the defendant had when he had dropped Duncan off at work. He also recognized the hat and the jacket as belonging to the defendant.

Two barbers, Robert and Eric McRae, testified that the defendant was a regular customer of their barbershop and that he had come into the shop sometime one morning in August with an uncharacteristic growth of facial hair. The defendant asked for a haircut and shave, which Eric provided. Neither Robert nor Eric could be definite as to the actual date on which the defendant had come in with the beard.

Regina Duncan, the mother of Andre Duncan, had recognized a composite sketch of the robber in the Poughkeepsie Journal as that of the defendant and had advised her son to go to the police. She identified the defendant as the person portrayed in the bank photographs.

Luigi Spidalieri, the defendant's landlord, saw the defendant in early August, at which time the defendant had a small beard. Spidalieri saw him again on August 14, 1987, at about 4:15 P.M., when the defendant paid him $500 in cash for the rent. At that time, the defendant was clean-shaven. Spidalieri also identified the defendant as the person depicted in one of the bank's pictures.

Darlene Jackson, a good friend of the defendant, had known the defendant for about 3½ years, seeing him about three times a week. Jackson was shown the bank surveillance photographs and identified the person therein as the defendant. She had no doubt about her identification.

The jury subsequently returned a verdict of guilty of robbery in the first degree.

The main contention of the defendant on appeal is that the court committed prejudicial error when it allowed the witnesses who knew the defendant, but who were not eyewitnesses to the robbery, to identify the defendant from the photographs taken by the bank's security camera. The People contend that the procedure was proper and cite *People v Byrnes* (33 NY2d 343) as their principal authority in support of this contention.

As the defendant correctly points out, *Byrnes* is not directly on point. In *Byrnes*, the defendant was convicted of rape, sodomy and incest after a trial at which his 11-year-old daughter, the complainant, testified that on two occasions she and her father had gone to the home of a man who had photographed her and her father in the nude engaging in various sexual acts. A number of the photographs, printed from the negatives seized at the man's home, were admitted into evidence after a photographic expert had testified that the negatives and the prints had not been altered in any manner. The girl then identified herself and her father in 10 of the photographs and testified that they fairly represented what had occurred. Her mother identified the defendant and the daughter in six of the photographs and identified either the defendant or the daughter in seven others. In several of the photographs, in which she identified her daughter only, she noted that the male, whose facial features were not visible, wore a sleeveless knit shirt of the type in evidence and which she recognized as belonging to her husband.

The question before the Court of Appeals was whether there was sufficient corroborative evidence of the complainant's testimony. The court's sole concern, in its own words, was whether "the objective evidence—the photographs—authenticated in part by the complainant, are insufficient corroboration in law for her testimony as to the occurrence of the acts of rape, sodomy and incest" *(People v Byrnes,* 33 NY2d 343, 346, *supra).* The court concluded "that the source of the authentication was sufficiently independent of the complainant's testimony and that the corroborative value of the photographs was properly submitted to the jury" *(People v Byrnes, supra,* at 348).

Thus, the Court of Appeals in *Byrnes (supra)* was not called upon to directly address the issue of whether the mother, who was not an eyewitness, should have been allowed to identify the defendant in the photographs which had already been authenticated as showing the crime. However, by allowing the

mother to corroborate her daughter's testimony by identifying her daughter and the defendant in the photographs, the court implicitly acknowledged that the identification testimony was proper.

Other than by implication in *Byrnes (supra)*, no New York case has been found which expressly decides the point. The defendant herein offers two bases for rejecting such testimony, namely, that it constitutes illegal bolstering as well as improper opinion testimony as to the ultimate fact in issue.

The defendant's first contention that the identification of the defendant as the person depicted in the photographs constituted bolstering under *Trowbridge (see, People v Trowbridge,* 305 NY 471) is without merit. Under the principles established by *Trowbridge,* the testimony of third parties concerning a complainant's prior out-of-court identification of a defendant is generally deemed to be improper bolstering and is inadmissible to establish the identity of the defendant as the perpetrator of the crime *(see, People v Hernandez,* 154 AD2d 197; *People v Bonnet,* 134 AD2d 436, 437). The rationale behind the *Trowbridge* rule is two-fold: first, such evidence is hearsay, and, second, "[t]he mere repetition of the identification by a third party has the potential of placing disproportionate emphasis on the identification and to influence the jury unduly with respect to its reliability" *(People v Rosario,* 127 AD2d 209, 214; *see, People v Caserta,* 19 NY2d 18, 21).

In this case, there was no hearsay violation since none of the witnesses who were not eyewitnesses to the crime testified as to any prior out-of-court statements of the bank tellers. Moreover, the testimony of the noneyewitnesses was not duplicative of the testimony of the eyewitnesses. The three bank tellers never stated that the defendant was the person in the photographs; rather, they merely authenticated the photographs as being accurate depictions of the crime scene and the robbery. The noneyewitnesses' testimony identifying the person depicted in the photographs as the defendant, therefore, was not duplicative or repetitive of the eyewitnesses' testimony. The photographs constituted objective, independent evidence. Once a foundation was laid for their admission into evidence *(see, People v Byrnes,* 33 NY2d 343, *supra)*, it was for the jury to determine whether they depicted the defendant.

The defendant further contends that the statement of opinion by witnesses as to whether the person in the photograph is the defendant usurps the jury's province as trier of the facts

as to the ultimate issue of identity. This objection is groundless.

As a general principle of common-law evidence, lay witnesses must testify only to the facts and not to their opinions and conclusions drawn from the facts. It is left to the jury to draw the appropriate inferences arising from the facts *(see,* Richardson, Evidence § 361 [Prince 10th ed]; *see also, People v Malphurs,* 111 AD2d 266; *Hartley v Szadkowski,* 32 AD2d 550). However, "for at least the last century, lay persons have been permitted to give opinion evidence only when the subject matter of the testimony was such that it would be impossible to accurately describe the facts without stating an opinion or impression" *(Kravitz v Long Is. Jewish-Hillside Med. Center,* 113 AD2d 577, 581-582; *see also,* Richardson, Evidence § 363 [Prince 10th ed]; *Senecal v Drollette,* 304 NY 446, 449; *Collins v New York Cent. & Hudson Riv. R. R. Co.,* 109 NY 243, 249). Thus, it has long been held that a lay witness may identify an individual portrayed in a photograph where that individual is known to the witness *(see, Ruloff v People,* 45 NY 213; *Schwartz v Wood,* 67 Hun 648, 21 NYS 1053; Richardson, Evidence § 364 [e] [Prince 10th ed]). In *Senecal v Drollette (supra,* at 449), the Court of Appeals noted: "As to identification, from a photograph of an object previously seen, that, too, is fact evidence, subject to preliminary examination by the opposing party as to the ability of the witness to observe, know and remember, and subject, too, to cross-examination and argument to the jury as to reliability, but evidence of asserted fact, nonetheless."

In making a determination on an issue of first impression, we should not be unmindful of decisions in other jurisdictions which may be of some guidance. Although no New York cases directly stand for the proposition that noneyewitnesses may be called on the People's direct case to identify the defendant from a photograph of the crime scene, in a number of Federal and State jurisdictions such testimony has been allowed, albeit in some instances in reliance upon general statutory provisions which expressly permit lay witnesses to render an opinion with respect to the determination of a fact in issue. Many of the State statutes are modeled after Federal Rules of Evidence rule 701, which provides: "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the

witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."

In reliance upon Federal Rules of Evidence rule 701, several Federal courts have allowed lay witnesses to render an opinion as to whether the individual in a bank photograph is the defendant when the criteria of personal knowledge of the defendant by the witness and the helpfulness of the testimony to the jury have been fulfilled. For example, in *United States v Robinson* (804 F2d 280 [4th Cir 1986]), the United States Court of Appeals for the Fourth Circuit upheld the trial court's ruling that the testimony of the defendant's brother identifying the individual shown in bank surveillance photographs as the defendant was admissible in the defendant's prosecution for armed robbery of a Maryland bank. After citing Federal Rules of Evidence rule 701, the court stated: "Sylvester Robinson was an individual who could testify under this rule as a lay witness. His testimony was based upon his perceptions from viewing the photographs and from his perceptions of and close association with his brother over the years. Although the defendant's appearance may not have physically changed from the time of the bank surveillance photograph until the time of trial, the individual in the photograph was wearing a hat and dark glasses, and the testimony of Sylvester Robinson could be helpful to the jury on the issue of fact of whether the appellant was the person shown in the bank surveillance photographs. A lay witness may give an opinion concerning the identity of a person depicted in a surveillance photograph if there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the jury. *United States v. Farnsworth,* 729 F.2d 1158, 1160 (8th Cir.1984). Sylvester Robinson certainly qualified as a person more likely to correctly identify the individual shown in the photograph" *(United States v Robinson, supra,* at 282; *see also, United States v Lucas,* 898 F2d 606 [8th Cir 1990], *cert denied* — US —, 111 S Ct 112; *United States v Langford,* 802 F2d 1176 [9th Cir 1986], *cert denied* 483 US 1008; *United States v Barrett,* 703 F2d 1076 [9th Cir 1983]; *United States v Jackson,* 688 F2d 1121 [7th Cir 1982], *cert denied* 460 US 1043; *United States v Borrelli,* 621 F2d 1092 [10th Cir 1980], *cert denied* 449 US 956; *United States v Brannon,* 616 F2d 413 [9th Cir 1980], *cert denied sub nom. Cox v United States,* 447 US 908; *United States v Ingram,* 600 F2d 260 [10th Cir 1979]).

Moreover, the cases make it clear that the mere fact that the jury has before it the bank surveillance photographs as

well as the defendant's presence in court as a comparison does not detract from the usefulness of such testimony *(see, United States v Barrett, supra,* at 1086; *United States v Ingram, supra,* at 261).

Both New Jersey and California, with comparable statutory provisions, have followed the Federal interpretation *(see, e.g., State v Carbone,* 180 NJ Super 95, 433 A2d 827; *People v Perry,* 60 Cal App 3d 608, 131 Cal Rptr 629). In those instances, there was also evidence that the defendant's appearance had changed since the date of the crime. In *People v Perry (supra,* 60 Cal App 3d, at 613, 131 Cal Rptr, at 632), the court reasoned that: "The witnesses each predicated their identification opinion upon their prior contacts with defendant, their awareness of his physical characteristics on the day of the robbery, and their perception of the film taken of the events. Evidence was introduced that defendant, prior to trial, altered his appearance by shaving his mustache. The witnesses were able to apply their knowledge of his prior appearance to the subject in the film. Such perception and knowledge was not available directly to the jury. The opinions of the witnesses were sufficiently based upon personal knowledge to permit their introduction; the question of the degree of knowledge goes to the weight rather than to the admissibility of the opinion."

The court in *Perry* concluded that the testimony was admissible under California Evidence Code § 800, which is virtually identical to Federal Rules of Evidence rule 701. The court went on to suggest that the issue of lay opinion photographic identification evidence was similar to nonexpert testimony on identity of handwriting, which is permissible. The court concluded that: "The testimony does not invade the province of the trier of fact, but rather is submitted as an aid in the determination of the ultimate question of the identity of the culprit and the defendant's guilt or innocence" *(People v Perry, supra,* 60 Cal App 3d, at 615, 131 Cal Rptr, at 633).

In Louisiana, such testimony has been admitted without the benefit of a statutory provision. In *State v Demouchet* (353 So 2d 1025), lay witnesses who were acquainted with the defendants, including the mother of one of the defendants, were allowed to identify the subjects of the bank surveillance photographs as being the defendants.

The consensus from the cases is that the testimony is helpful if the criteria of personal knowledge of the defendant

and helpfulness to the jury are fulfilled, with the proviso, however, that the probative value of the evidence must outweigh any prejudice. For example, it was held in *United States v Butcher* (557 F2d 666 [9th Cir 1977]), that the identifying testimony to be given by the police officers and parole officers presented the possibility of prejudice to the defendant, since their testimony would suggest prior prolonged contact with law enforcement officials *(see also, People v Mixon,* 129 Cal App 3d 118, 180 Cal Rptr 772).

The above out-of-State cases are not inconsistent with the common-law rules developed in New York. For instance, 1 CJI (NY) 7.12 (at 279) reads, in pertinent part: "Ordinarily, the law does not permit a lay witness to testify as to his opinion or conclusion as to a fact in issue. However, *in certain situations, a lay witness is permitted to testify as to his opinion or conclusion wherever such opinion would be an aid to the jury in coming to its own opinion or conclusion as to the fact in issue"* (emphasis added).

Furthermore, as previously noted, the rule has developed in this State that lay opinion testimony may be admissible when the subject matter of the testimony is such that it would be impossible to accurately describe the facts without stating an opinion or impression *(see,* Richardson, Evidence § 363 [Prince 10th ed]; *Kravitz v Long Is. Jewish-Hillside Med. Center,* 113 AD2d 577, 581-582, *supra).* This is not too dissimilar to the statement of the United States Court of Appeals for the Seventh Circuit in *United States v Jackson* (688 F2d 1121, *cert denied* 460 US 1043, *supra),* that "[o]pinion testimony by a lay witness may be admitted under Rule 701 whenever the witness cannot adequately communicate to the jury the facts upon which his or her opinion is based" *(United States v Jackson, supra,* at 1124).

It is clear that the Federal and State court decisions, whether based upon statute or otherwise, have recognized that modern technology can be helpful in criminal prosecutions without in any way prejudicing the rights of the defendant. The courts in this State have often done likewise *(see, e.g., People v Wesley,* 140 Misc 2d 306 [DNA fingerprinting]). The rule developed in other jurisdictions with respect to the identification testimony by a noneyewitness, which is at issue in this case, is a sensible one. It does not violate any of our own evidentiary rules and, in appropriate cases, does not prejudice any rights of the defendant.

Accordingly, we hold that under the proper circumstances, a lay witness, even though not an eyewitness to the crime, may be allowed to express his or her opinion that the individual depicted in a photograph is the defendant. The admissibility of such testimony is a matter addressed to the sound discretion of the trial court which must determine whether the probative value of the testimony outweighs any prejudicial effect that it may have. In reaching its determination as to whether to admit such testimony, the court may consider a variety of factors, including whether the lay opinion testimony would be of assistance to the jury (e.g., as in cases where the defendant's appearance has changed in some fashion) and whether a sufficient foundation has been established to show that the opinion is rationally based upon the perception of the witness (e.g., the extent of the witness's familiarity with the defendant within a time frame reasonably connected with the date of the crime). The court may also wish to instruct the jurors at the time the evidence is introduced that the opinion is merely an aid to their decision based upon all the facts and circumstances of the case and that they are entitled to either accept or reject it.

Applied to the case at bar, it is submitted that all the essential preconditions for the admission of the opinion evidence were satisfied. The People laid a careful foundation that the defendant had deliberately changed his appearance to thwart identification. All the witnesses who testified knew the defendant and saw him on or about the date of the commission of the offense. Thus, the evidence was properly admitted. Moreover, its probative value clearly outweighed any prejudicial impact.

Viewing the evidence in the light most favorable to the People (see, *People v Contes,* 60 NY2d 620), we find it legally sufficient to establish the defendant's guilt beyond reasonable doubt. Moreover, upon exercise of our factual review power (see, CPL 470.15 [5]; *People v Bleakley,* 69 NY2d 490, 495), we are satisfied that the verdict was not against the weight of the evidence (CPL 470.15 [5]).

The evidence of guilt was overwhelming and none of the defendant's contentions, insofar as they are preserved for appellate review (see, CPL 470.05 [2]), warrant reversal (see, *People v Crimmins,* 36 NY2d 230). Further, we find that the

sentence imposed was justified by the defendant's prior criminal record *(see, People v Suitte,* 90 AD2d 80). Accordingly, the judgment appealed from is affirmed.

KOOPER, J. P., SULLIVAN and HARWOOD, JJ., concur.

Ordered that the judgment is affirmed.