895 P.2d 1016

Sandra L. ADAMS and Henry Adams, wife and husband, Plaintiffs–Appellees,

v.

Joe AMORE, a single man; Kelli Stazenski and John Doe Stazenski, wife and husband; George Tyree and Jane Doe Tyree, husband and wife, Norma Liska and John Doe Liska, wife and husband; and the Town of Chino Valley, a Municipal Corporation, Defendants–Appellants.

No. 1 CA–CV 92–0292.

Court of Appeals of Arizona, Division 1, Department D.

Dec. 6, 1994.

As Amended Dec. 9, 1994.

Review Denied May 23, 1995.

Law Offices of Charles Anthony Shaw by Charles Anthony Shaw, Prescott, for plaintiffs-appellees.

Mangum, Wall, Stoops & Warden by Jon W. Thompson, Flagstaff, for defendants-appellants.

OPINION

FIDEL, Judge.

We hold in this wrongful termination case that the trial court erroneously permitted plaintiff's expert witness to draw a "profile of whistle blowers" for the jury and to inform the jury that plaintiff's characteristics fit that profile.

I.

Between September 1988 and September 1989, plaintiff Sandra Adams ("Adams"), a police dispatcher for the Town of Chino Valley, became embroiled in a departmental conflict that arose from the arrest of a town police officer for driving while intoxicated. There had long been bad blood between the arrested and the arresting officer; the arrested officer was permitted to resign instead of being prosecuted; the arresting officer was discharged; departmental employees

took sides; and eventually Adams was herself discharged after providing internal investigative information to the discharged officer and his lawyer. Adams availed herself of the town's grievance and appeal process, but the town's personnel committee upheld her termination.

In 1990, Adams filed this suit against multiple individual defendants and the town. She alleged, among various grounds for relief, that the town violated public policy by discharging her for being a whistle-blower.

The Town of Chino Valley appeals from a $250,000 judgment entered against it after a jury trial. For reasons set forth in a contemporaneous memorandum decision, we reverse that judgment.[1] In this published portion of our decision, we discuss the trial court's acceptance of expert testimony on whistle blowers from Donald Soeken, Ph.D. We reach this issue because the trial court's acceptance of Dr. Soeken's testimony might otherwise tend to establish the validity of similar testimony in future cases.[2] We publish only this part of our decision because only this part meets the standards for publication set forth in Ariz.R.Civ.App.P. 28(b). See Fenn v. Fenn, 174 Ariz. 84, 85, 847 P.2d 129, 130 (App.1993).

## II.

Donald Soeken testified for plaintiff as an expert on the behavioral characteristics of whistle-blowers. Soeken is a licensed clinical social worker with the Commission on Mental Health for the District of Columbia, who, in his spare time, studies people claiming to be whistle-blowers. The town objected that Soeken's testimony was wholly inadmissible both because it lacked any scientific basis and because the subject was one on which the jury required no expert. The trial court declined to exclude Soeken's testimony altogether. Instead, the court permitted Soeken to testify about the profile of whistle-blowers and to relate Adams's experience to that profile, but excluded testimony that Adams

was a whistle-blower, that the town had retaliated against her, and that she had been damaged by her experience with the town.

Soeken testified that he developed a whistle-blower profile by mailing a questionnaire to two hundred self-described whistle-blowers and analyzing the responses of the eighty-seven persons who chose to complete the profile and mail it back. He characterized a typical whistle-blower as someone suffering from post traumatic stress syndrome, "acting out of conscience," and doing "the right thing." Describing a retaliation phase of whistle-blowing, he stated that "[n]inety percent of the whistle-blowers lost their job or were demoted." Retaliation is typical, he stated, "even though [the] charges are proved true." Soeken testified that Adams had the characteristics of a whistle-blower and that she had experienced the kind of retaliation—harassment, transfer to a different position, and ultimate loss of job—that whistle-blowers typically undergo. According to Soeken, the only characteristic that set Adams apart from the profile was that "[s]he's one of the ... more mature whistle-blowers."

## III.

▇ Trial courts have broad discretion in admitting expert testimony, Lay v. Mesa, 168 Ariz. 552, 554, 815 P.2d 921, 923 (App. 1991); "[h]owever, when the admissibility of expert opinion evidence is a question of 'law or logic,' it is this court's responsibility to determine admissibility." State v. Moran, 151 Ariz. 378, 381, 728 P.2d 248, 251 (1986). Here we find the introduction of Soeken's expert testimony inadmissible for two reasons.

First, plaintiffs failed to lay the foundation that Soeken based his opinions on facts or data "of a type reasonably relied upon by experts in [his] particular field." Ariz. R.Evid. 703. Specifically, they failed to establish the representative validity of Soeken's sampling, and there is considerable question

---

1. Because the jury exonerated the individual defendants on whose acts the liability of the town depends, and because the plaintiff alleged only derivative liability on the part of the town, we conclude in our contemporaneous memorandum decision that the judgment against the town cannot stand.

2. It is not uncommon, when attempting to qualify an expert and establish the validity of the methodology underlying his opinions, to inquire whether other courts have approved the expert's qualifications and found an adequate foundation for such testimony.

whether they could have done so, as Soeken merely generalized a profile from the unverified reports of the eighty-seven respondents to his inquiry who chose to characterize themselves as whistle-blowers.

██ Second, even if plaintiffs had laid an adequate foundation for the validity of Soeken's methodology, his testimony would still have been improper, because this jury had no need for expert testimony. Expert testimony is inappropriate if "the jury is qualified without such testimony 'to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject.'" *State v. Chapple,* 135 Ariz. 281, 293, 660 P.2d 1208, 1220 (1983) (quoting Fed.R.Evid. 702, advisory committee note). This was such a case.

██ In support of the admissibility of Soeken's whistle-blower profile, plaintiffs analogize to expert testimony concerning the behavioral characteristics of victims of sexual or child abuse. *See State v. Lindsey,* 149 Ariz. 472, 720 P.2d 73 (1986); *State v. Tucker,* 165 Ariz. 340, 798 P.2d 1349 (App.1990). The analogy does not hold. The function of an expert witness is "to provide testimony on subjects that are beyond the common sense, experience and education of the average juror." *Lindsey,* 149 Ariz. at 475, 720 P.2d at 76. Arizona courts have permitted testimony concerning the behavioral characteristics of victims of sexual and child abuse because such characteristics are beyond the knowledge and experience of the average juror, *id.,* and because such evidence is relevant to give juries a context for evaluating the uncertain or conflicting recollections common to victims of sexual and child abuse. *Id.* at 473–74, 720 P.2d at 74–75. Courts have come to accept scientific documentation of a behavior pattern among such victims that explains testimonial uncertainty or inconsistency that would otherwise defeat their credibility. *Id.* at 473, 720 P.2d at 74.

No comparable need for testimonial context faced the jurors here; they could derive no specialized knowledge from reviewing the behavioral characteristics of whistle-blowers that would assist them in evaluating Adams's credibility or in resolving any other issue material to the case. Plaintiffs' roundabout purpose in introducing Soeken's testimony—accomplished by comparison of Adams to the profile—was to inform the jury that Adams acted "out of conscience," sought to do "the right thing," experienced retaliation, and suffered emotional stress. This testimony was nothing but an opinion on how the jury ought to decide the case; it invaded the province of the jury, and the trial court should have ruled it out of bounds. *See Moran,* 151 Ariz. at 383, 728 P.2d at 253 (citing Fed.R.Evid. 704).

## CONCLUSION

For the reasons stated in this opinion and the concurrent memorandum decision, the judgment against the Town of Chino Valley is reversed.

GRANT and GERBER, JJ., concur.