17 P.3d 101

STATE of Arizona, Appellee,

v.

Michael Philip LOGAN, Appellant.

No. 1 CA–CR 99–1041.

Court of Appeals of Arizona,
Division 1, Department A.

Dec. 26, 2000.

Review Granted May 23, 2001.

Janet Napolitano, Attorney General, by Paul J. McMurdie, Chief Counsel, Phoenix, and Robert A. Walsh, Assistant Attorney General, Attorneys for Appellee.

The Wood Law Office, by Ronald D. Wood, Benjamin M. Brewer, Show Low, Attorneys for Appellant.

## OPINION

LANKFORD, Presiding Judge.

¶ 1 Defendant Michael Phillip Logan ("Logan") appeals his conviction and sentence for one count of theft, a class two felony. A jury convicted Logan of stealing money from an elderly woman for whom he had performed paralegal services. Because the trial court failed to instruct the jury on a disputed element of the offense, we reverse and remand for a new trial.

¶ 2 The facts are as follows. A seventy-five year old woman ("the victim") hired Logan, a paralegal, to prepare a will for her seriously ill husband. Logan prepared a will for each of them. Her husband died the next day. At his death the couple had approximately $50,000 in two separate certificates of deposit ("CDs"). Logan assisted the victim with obtaining her medicine, shopping and other chores. The victim thought of Logan as a son. The victim signed several documents including one giving Logan power of attorney to authorize him to manage her affairs. She also signed a new will listing her stepdaughter and Logan as the primary beneficiaries, and executed a living trust and a living will for herself.

¶ 3 Logan began withdrawing money from the victim's accounts, depositing the money into his personal account. Logan withdrew more than $50,000 of the victim's money. He purchased household goods, a vacation to Mexico and a new vehicle, among other items. Logan also contacted the victim's life insurance company and requested that it send him the cash value of the victim's and her husband's policies. Because the victim trusted Logan, she did not question Logan about her accounts. The victim became concerned when the water company notified her that the bill had not been paid.

¶ 4 Logan's former fiancee called Adult Protective Services to report Logan's alleged misconduct. She told the police that she suspected Logan of embezzling money from the victim, based on banking documents she discovered while living at Logan's residence. The police issued subpoenas to Wells Fargo and Bank One for documents pertaining to the victim's and Logan's accounts. Before receiving the documents, the police contacted Logan. He denied any knowledge of money missing from the victim's accounts. Logan told the police that he had a power of attorney and that his services were limited to taking her to the doctor and paying her bills.

¶ 5 Logan was charged with theft. At trial Logan claimed that the victim had given him permission to manage her funds in whatever manner he saw fit. He stated that he had an oral agreement with the victim for a loan, in which he would repay her with interest in three years. The jury found Logan guilty of theft. The trial court sentenced Logan to prison for an aggravated term of 6.5 years and ordered Logan to pay $58,952.58 in restitution.

¶ 6 Logan advances several contentions on appeal. He first contends that the trial court erred when it failed to instruct the jury on a disputed element in the theft statute. He also argues that the trial court erred because it refused to give a "good character" instruction. He next asserts that the trial court erred in instructing the jury regarding the validity of legal documents that were not in dispute. Finally, he contends that the trial court erred in permitting an expert witness to testify on the behavior patterns of elderly victims of crime and those who victimize them.

## I.

¶ 7 Logan's first argument is that the trial court erred because it failed to instruct the jury on a disputed element in the theft statute. At trial, Logan argued that no theft occurred because the victim had authorized the transactions. The bulk of the funds at issue consisted of approximately $50,000 the victim had invested in CDs. Logan admitted that he had transferred these funds into his own account, but claimed that he had done so with the victim's agreement. Logan claimed that he had never intended to permanently deprive the victim of those funds, but had agreed that he would repay her in three years. In return, she would receive a higher interest rate than she otherwise would have received. There was no written loan agreement. Logan contended that he was similarly authorized to engage in the other transactions at issue, presenting evidence that some of the funds had been used for the victim's direct benefit. He also presented evidence that he had obtained a power of attorney from the victim.

¶ 8 The State alleged that Logan committed theft in at least one of three ways. The relevant portions of the theft statute, Arizona Revised Statutes Annotated ("A.R.S.") section 13–1802 (Supp.2000), provide:

A. A person commits theft if, *without lawful authority*, the person knowingly:
1. Controls property of another with the intent to deprive the other person of such property; or
2. Converts for an unauthorized term or use services or property of another entrusted to the defendant or placed in the defendant's possession for a limited, authorized term or use; or
3. Obtains services or property of another by means of any material misrepresentation with intent to deprive the other person of such property or services.

(Emphasis added.)

¶ 9 The trial court instructed the jury on each element of the above-quoted subsections of the statute. However, the trial court failed to instruct the jury that it must find that the defendant had acted "without lawful authority" when he obtained the property.

¶ 10 Although Logan failed to object to this omission at trial, he argued in a post-verdict motion for new trial that the error was fundamental. The trial court denied the motion, concluding that the term "without lawful authority" was superfluous. The trial court reasoned that the other instructions given necessarily implied the "without lawful authority" requirement.

¶ 11 The State argues that any error in the instruction was invited because Logan requested the instruction.[1] However, as noted in the State's response to the motion for new trial, the instruction given was identical to the theft instruction set forth in the former Recommended Arizona Jury Instructions (Criminal) (1989) or "RAJI." Although our supreme court no longer "recommends" jury instructions, *see* Introductory Note to Arizona Revised Jury Instructions (Criminal) (1996), no published Arizona opinion disapproves of this RAJI. Moreover, the instructions are identical to those contained in the current version of the Arizona Revised Jury Instructions published by the State Bar. Under the circumstances, it would be unduly harsh to apply the invited error doctrine to a standard instruction that has previously enjoyed the imprimatur of the courts. *See State v. Diaz*, 168 Ariz. 363, 365, 813 P.2d 728, 730 (1991) (discussing cases in which Arizona courts had declined to apply invited error doctrine to defendant's request of flawed RAJI).

¶ 12 Although we find the invited error doctrine inapplicable, we review only for fundamental error because Logan failed to object to the instruction at trial. *State v. Gendron*, 168 Ariz. 153, 154, 812 P.2d 626, 627 (1991). Failure to instruct the jury on a disputed element of a charged offense constitutes fundamental error. *See State v. Fullem*, 185 Ariz. 134, 138–39, 912 P.2d 1363, 1367–68 (App.1995).[2] The issue of Logan's authority was disputed at trial.

1. The requested jury instructions do not appear in the record. However, the record contains no denial by Logan that he requested an instruction identical to the one given.

2. Conversely, no fundamental error occurs when

¶ 13 The failure to instruct on "without lawful authority" was error. Although the trial court was arguably correct that the instructions given on some methods of theft implicitly required a finding that defendant acted without lawful authority, we cannot agree that this was so as to the first theory alleged by the State. That theory was that Logan committed theft by control of property with intent to deprive. A.R.S. § 13-1802(A)(1).

¶ 14 The "without lawful authority" instruction was essential because it is possible to deprive another person of property with lawful authority. "Deprive" means to remove, take or withhold. Webster's Ninth New Collegiate Dictionary 341 (1986). For example, transfers resulting from legitimate sales or loans upon which a borrower innocently defaults effectively "deprive" the previous owner of the property. But these do not constitute theft. Thus, the requirement that the deprivation be without lawful authority is not superfluous with respect to subsection 13-1802(A)(1). Because the verdict form did not require the jury to specify which theory served as the basis for the conviction, we cannot determine that the verdict was unaffected by the omission.

¶ 15 The State nevertheless suggests that the error was harmless because Logan's defense was focused upon a lack of intent to deprive rather than a claim of lawful authority. However, the burden was on the State to prove the absence of lawful authority. Thus, even if Logan had only generally denied the allegations, the failure to instruct on the element of the offense would have constituted fundamental error.

an instruction fails to include an element of the charged offense, but that element is not disputed. We also echo the reminder of our supreme court that "the same error may be fundamental in one case but not in another." *State v. Bible,* 175 Ariz. 549, 572, 858 P.2d 1152, 1175 (1993).

3. We also note that Logan and the trial court apparently believed that the only admissible character evidence was that relating to truthfulness or that was otherwise directly linked to an element of the charged crime. *See Chung Sing v. United States,* 4 Ariz. 217, 219–20, 36 P. 205, 206 (1894). *See also* Morris K. Udall et al., *Arizona*

¶ 16 Moreover, Logan's defense made this a disputed issue. As to the funds transferred from the CD accounts, for example, Logan responded that the transfer was merely a loan. He also argued that he had an agreement with the victim and a power of attorney from her. Because the trial court failed to instruct the jury on a disputed element of the offense, Logan is entitled to a new trial.

II.

¶ 17 We address the remaining issues because they may arise on retrial. Logan's second contention is that the trial court erred when it refused to give a "good character" instruction. Several of Logan's friends and former clients testified as character witnesses. The trial court concluded that Logan was not entitled to a good character instruction because there was no testimony as to reputation for truthfulness in the community, and that the testimony offered was not so much an endorsement of Logan's character as of his paralegal skills.

¶ 18 Logan failed to preserve this issue for appeal, however, by failing to ensure that his proffered jury instruction was included in the record. Accordingly, we cannot determine whether the trial court erred in rejecting it. *See State v. Jessen,* 130 Ariz. 1, 8, 633 P.2d 410, 417 (1981).

¶ 19 Although we cannot determine whether the specific instruction was appropriate, should Logan present similar evidence on retrial he likely would be entitled to some form of a good character instruction. While the trial court's characterization of the evidence was largely accurate, Logan did offer some evidence of good character other than his skills as a paralegal.[3]

*Practice: Law of Evidence* § 83, at 172 (3d ed.1991). However, the modern rule allows admission of general evidence of a law-abiding character to rebut an allegation of criminal conduct. *See United States v. Angelini,* 678 F.2d 380, 382 (1st Cir.1982)(citing *Chung Sing* as the only case squarely stating that evidence of law-abidingness is generally inadmissible); *United States v. Hewitt,* 634 F.2d 277, 280 (5th Cir.1981) (noting unanimous agreement in the federal courts and citing *Chung Sing* as one of three state court decisions contrary to general rule); *see also* 1 Stephen A. Saltzburg et al., *Federal Rules of Evidence Manual* 375 (7th ed.1998)(not-

### III.

¶ 20 Logan also contends that the trial court erred in *sua sponte* instructing the jury not to consider the validity of legal documents that Logan had prepared for the victim when the validity of these documents, which were admitted into evidence without objection, was undisputed. Logan's argument is somewhat unclear, but it appears to challenge an instruction given by the trial court regarding contract formation and power of attorney.

¶ 21 While settling instructions, the trial court proposed instructing the jurors that they were not to consider the legal validity of the documents. Logan objected that the validity of the documents was undisputed and that the trial court should not be proposing its own instruction on the issue.

¶ 22 On appeal, Logan argues that the instruction was improper because it suggested that jurors should question the validity of documents that were beyond question. Logan's claim is without merit because the instruction expressly told jurors *not* to consider the validity of the documents. Jurors are presumed to follow the court's instructions. *State v. Ramirez*, 178 Ariz. 116, 127, 871 P.2d 237, 248 (1994). Moreover, Logan has not challenged the underlying premise of the instruction, *i.e.*, that the validity of the documents was irrelevant. In other words, Logan does not contend that if the jury had determined that the documents were valid, he would have been acquitted of theft. Logan's assertion that the instruction was not supported by the evidence is clearly without merit because the documents were admitted into evidence. And his contention that the jury was confused is unsupported by the record or by argument. We are unpersuaded that the instruction was erroneously given.

### IV.

¶ 23 Finally, Logan contends that the trial court erred in permitting the lead investigator in the case, Detective Harry, to testify as an expert on "elderly abuse." Detective Harry testified about the characteristic behaviors of both victims and perpetrators. He stated that the perpetrator would do "just about anything to ingratiate that person into the elder's life" to gain the trust of the elder. He also testified that as a result, the victim is disinclined or unlikely to suspect or believe the allegations of misdeeds by the perpetrator. Finally, Detective Harry asserted that older persons are less likely to "be able to or would so desire to be able to manage their assets or understand the management of their assets."

¶ 24 A trial court's ruling on expert testimony will not be disturbed on appeal absent abuse of discretion. *State v. Varela*, 178 Ariz. 319, 325, 873 P.2d 657, 663 (App.1993). Rule 702 of the Arizona Rules of Evidence governs expert evidence and states:

> *If* scientific, technical, or other specialized knowledge *will assist the trier of fact* to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

(Emphasis added.) "If the jury is as competent to determine the fact in issue as the expert, ordinarily the expert's opinion will be of no assistance and should not be admitted." *State v. Kevil*, 111 Ariz. 240, 247, 527 P.2d 285, 292 (1974). *Accord, Adams v. Amore*, 182 Ariz. 253, 255, 895 P.2d 1016, 1018 (App. 1994) (holding that trial court erred in admitting expert testimony regarding characteristics of "whistle blower").

¶ 25 Detective Harry testified about the behavior patterns of victims and perpetrators

---

ing that "Courts have generally held that 'character traits ... may include general traits such as lawfulness and law-abidingness' ") (citing *United States v. Diaz*, 961 F.2d 1417, 1419 (9th Cir. 1992)); John W. Strong et al., *McCormick on Evidence* § 191, at 674 (5th ed.1999) (stating that "[a] few general traits, like being law-abiding, seem relevant to almost any accusation"); *Weinstein's Federal Evidence* § 405.03[1][c], at 405–9

n. 8 (2d ed.1997) (citing *Hewitt* ); IA John Henry Wigmore, *Evidence in Trials at Common Law* § 59, at 1245 (1983) (stating that "courts are often liberal in permitting the accused to offer his general character"). Cf. *Michelson v. United States*, 335 U.S. 469, 476, 69 S.Ct. 213, 93 L.Ed. 168 (1948) (evidence of good character may in itself raise a reasonable doubt as to defendant's guilt).

in elder abuse cases. The victim testified that she had trusted Logan and that he had stolen her money. Her testimony alone allowed the jury to understand the fraud and attendant circumstances. In addition, the behavior of victim and defendant were within the common understanding of lay persons. The jury needed no assistance from the detective's experience. Therefore, the trial court abused its discretion by permitting his testimony.[4]

¶ 26 The admission of Detective Harry's testimony was error. We need not decide whether this evidence was so prejudicial that, standing alone, it would require reversal because we reverse on another ground, the failure to properly instruct the jury. Accordingly, it is enough that our decision provides guidance to the trial court on retrial regarding the admissibility of this evidence.

¶ 27 Because the trial court failed to instruct the jury on a disputed element of the crime of theft, Logan is entitled to a new trial. Accordingly, the conviction and sentence are reversed.

CONCURRING: ANN A. SCOTT TIMMER, Judge, SUSAN A. EHRLICH, Judge.

---

4. We recognize that similar expert testimony is allowed in cases involving sexual abuse. *See State v. Lindsey,* 149 Ariz. 472, 473–74, 720 P.2d 73, 74–75 (1986). The *Lindsey* court "recognized that expert testimony on recantation and other problems afflicting sexual abuse victims may explain a victim's seemingly inconsistent behavior and aid jurors in evaluating the victim's credibility." *State v. Moran,* 151 Ariz. 378, 381, 728 P.2d 248, 250 (1986) (interpreting *Lindsey* ). But this has been an exception consistently confined to that context. *Cf. State v. Lee,* 191 Ariz. 542, 545, 959 P.2d 799, 802 (1998) (profile evidence may not be used to prove drug courier activity). Moreover, the rationale for permitting the testimony in sexual abuse cases is not present here. In sexual abuse cases, victims may exhibit behaviors which might be attributed by jurors to "inaccuracy or prevarication" without the benefit of expert testimony that the behaviors are entirely consistent with victimization. *See Lindsey,* 149 Ariz. at 474, 720 P.2d at 75. The record reveals no such problem in this theft case.